UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CAUSE NO.: 2:18-CR-101-3-TLS |
| LEROY COLEMAN | |

**OPINION AND ORDER**

This matter is before the Court on the Government's objection to the Presentence Report ("PSR"), as submitted to the Court in the Addendum to the PSR [ECF No. 136]. For the reasons set forth below, the Court SUSTAINS the Government's objection.

**FACTUAL AND PROCEDUTAL BACKROUND**

From approximately November 2017 through August 2018 a heroin drug trafficking operation ("DTO") was operating out of an apartment building at 4104 Madison Street in Gary, Indiana. PSR ¶¶ 8, 10, 24–27, ECF No. 135. The DTO was comprised of Defendant Coleman and his four co-defendants: Lamont Coleman, Katrina Owens, Tony Petty, and Augustine Pike. *Id.* ¶¶ 8–10. The PSR indicates that Co-Defendant Coleman owned the apartment building and was the leader of the DTO. *Id.* The PSR also details that Co-Defendant Owens maintained a leadership position in the DTO, while the Defendant and remaining co-defendants were only minor participants, operating as "runners" at the direction of the DTO's leaders. *Id.* Additionally, each of the co-defendants lived in the apartment building. *Id.* ¶¶ 9, 25.

The DTO's organization and business methodology was relatively simple. Co-Defendants Coleman and Owens would take calls from customers and dispatch a runner to deliver heroin and collect payment. *Id.* ¶¶ 8–10. On twelve occasions confidential informants went through this

1

process to purchase heroin. *Id.* ¶¶ 11–22. The Defendant was involved in three such exchanges: Specifically, on November 6, 2017, November 16, 2017, and November 27, 2017, when the Defendant exchanged, respectively, 1.140 grams, 1.170 grams, and .976 grams of heroin for money. *Id.* ¶¶ 11–13. Co-Defendants Perry and Pike served as runners for the remainder of the observed exchanges. *Id.* ¶¶ 14–22. The last exchange involving a confidential informant took place on August 14, 2018. *Id.* ¶ 22.

On August 16, 2018, a nine-count Indictment [ECF No. 1] was filed and an arrest warrant was issued for the Defendant [ECF No. 4]. On August 28, 2018, law enforcement executed a search warrant at 4104 Madison Street, Apartment 1, Gary, Indiana. PSR ¶ 24. Co-Defendants Coleman and Owens were in the apartment at the time of the search. *Id.* Law enforcement recovered approximately 11.500 net grams of heroin, 3.451 net grams of cocaine base, and 12.500 gross grams of clonazepam pills. *Id.* ¶ 25. Additionally, $21,392 and two firearms were recovered during the search. *Id.* On the day of the search each of the five defendants were arrested. *Id.* After their arrest, Co-Defendants Petty and Pike confirmed the operations described above. *Id.* ¶ 26.

The Defendant's Initial Appearance [ECF No. 10] occurred on August 28, 2018. On September 20, 2018, a Superseding Indictment [ECF No. 37] was filed with the Court. A Second Superseding Indictment [ECF No. 93] was then filed on July 17, 2019. The Defendant was arraigned [ECF No. 102] under the Second Superseding Indictment on July 26, 2019. On August 6, 2019, the Defendant pled guilty [ECF No. 112] to Count 1 of the Second Superseding Indictment pursuant to the Plea Agreement [ECF No. 106], which was filed with the Court on July 30, 2019. Count 1 charged the Defendant with participating in a conspiracy to possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of

heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. On September 4, 2019, the Court adjudged the Defendant guilty to Count 1 of the Second Superseding Indictment. [ECF No. 119].

On October 18, 2019, the Draft PSR [ECF No. 126] was filed. On October 23, 2019, the Government filed an objection to the Draft PSR [ECF No. 128]. The Final PSR and the Addendum to the PSR [ECF Nos. 135, 136] were then filed on November 6, 2019. The Addendum to the PSR indicates that the Government objects to the drug quantity calculation and base offense level prescribed by the PSR. Addendum to the PSR 1, ECF No. 136. As the objection concerns facts and issues that are relatively straightforward, no additional briefing was ordered.

## LEGAL STANDARD

Section 2D1.1 of the Sentencing Guidelines sets forth the method by which sentencing courts are to determine the base offense level for a conviction under 21 U.S.C. § 841(b)(1)(C). U.S. Sentencing Guidelines Manual § 2D1.1 (U.S. Sentencing Comm'n 2018). For offenses where death or serious bodily injury did not result from the use of the relevant controlled substance, such as in the instant case, Section 2D1.1(a)(5) directs the sentencing court to calculate the offense level by using the Drug Quantity Table set forth in Section 2D1.1(c). *Id.* at § 2D1.1(a)(5). In order to use the Drug Quantity Table, the sentencing court must first determine the type and quantity of controlled substance that was involved in the offense. *See id.* at § 2D1.1(c).

Drug quantity must be established by a preponderance of the evidence. *United States v. Turner*, 604 F.3d 381, 385 (7th Cir. 2010). However, calculating drug quantity is not an "exact science," and "a district court is allowed to make reasonable estimates of drug quantity based on

3

the record before it." *United States v. Sewell*, 780 F.3d 839, 849 (7th Cir. 2015) (citing *United States v. Acosta*, 534 F.3d 574, 582 (7th Cir. 2008)). "Estimates are reasonable if they are grounded in 'evidence possessing . . . sufficient indicia of reliability and not nebulous eyeballing.'" *Id.* (quoting *United States v. Durham*, 211 F.3d 437, 444 (7th Cir. 2000)). Consequentially, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citing *United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008); *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007)).

When calculating the drug quantity for a particular offense, the sentencing court must consider a wide array of conduct. *Id.* at § 1B1.3. Of course, the sentencing court must consider the acts and omissions of the defendant. *Id.* at § 1B1.3(a)(1)(A). Additionally, in instances of jointly undertaken criminal activity, such as a criminal plan, scheme, or conspiracy, the sentencing court must also consider "all acts and omissions of others that were— (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction . . . ." *Id.* at § 1B1.3(a)(1)(B); *see also United States v. Jackson*, 733 F. App'x 313, 315 (7th Cir. 2018) (citing *United States v. Austin*, 806 F.3d 425, 430 (7th Cir. 2015); Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (U.S. Sentencing Comm'n 2018)). Thus, for defendants involved in a drug trafficking conspiracy, the sentencing court must consider "not only [the] drug quantities directly attributable to [the defendant] but also [the] amounts involved in transactions by co-conspirators that were reasonably foreseeable to [the defendant]." *United States v. Jones*, 900 F.3d 440, 446 (7th Cir. 2018) (citing *Austin*, 806 F.3d at 431); *see also Turner*, 604 F.3d at 385 (quoting *Acosta*, 534 F.3d at 585).

The "essential factor" a sentencing court must consider when determining whether relevant conduct was reasonably foreseeable to a defendant is "[t]he degree of [the defendant's] participation in the joint undertaking." *United States v. Lomax*, 743 F. App'x 678, 682 (7th Cir. 2018) (citing *United States v. Goodwin*, 496 F.3d 636, 642–43 (7th Cir. 2007); *United States v. Edwards*, 945 F.2d 1387, 1393–94 (7th Cir. 1991)). Notably, "reasonable foreseeability 'does not require that a coconspirator be aware of the precise quantity involved in each of an ongoing series of illegal transactions.'" *Id.* (quoting *United States v. Longstreet*, 567 F.3d 911, 924 (7th Cir. 2009)).

**ANALYSIS**

Considering no objections were made to the factual content of the PSR, the Court finds that the PSR is sufficiently reliable for the purposes of sentencing. The only parts of the PSR at issue are the drug quantity calculation and, consequently, the base offense level. Addendum to the PSR 1. In the Plea Agreement, the Government and the Defendant agreed that "the amount of heroin involved in both [the] offense of conviction and all relevant conduct under the U.S. Sentencing Guidelines is at least 20 grams but less than 40 grams of heroin." Plea Agreement ¶ 7(c)(ii), ECF No. 106–1. However, the PSR sets forth a drug quantity of less than 10 grams of heroin. PSR ¶ 30. Specifically, the PSR concludes that "the defendant shall be held responsible only for the drug transactions to which he agreed to participate in" because the Defendant was unable to reasonably foresee the conduct of his co-defendants. PSR ¶¶ 29, 30. The PSR reached this conclusion because there is no evidence to suggest that the Defendant knew the entire scope of the conspiracy and because the Defendant was likely unaware when the DTO leaders dispatched other drug runners. *Id.* ¶ 29. The Government contends that due to the "frequency with which [Co-Defendant Coleman and Owens] were dispatching runners and their close living

5

proximity," the conduct of the Defendant's co-defendants was reasonably foreseeable. Addendum to the PSR 1.

In the instant case there are four relevant sources of heroin for the drug quantity calculation: first, the 3.286 grams of heroin the Defendant sold to confidential informants; second, the 2.867 grams of heroin Co-Defendant Perry sold to confidential informants; third, the 7.143 grams of heroin Co-Defendant Pike sold to confidential informants; and fourth, the 11.500 grams of heroin recovered by law enforcement. PSR ¶¶ 11–25.[1] The Defendant will be accountable for this conduct—and thus the 24.796 grams of heroin—if it was reasonably foreseeable to him.

The facts established by the PSR are sufficient for the Court to conclude that the relevant conduct was reasonably foreseeable to the Defendant. The Defendant was involved in the conspiracy for approximately one year. PSR ¶¶ 8, 10, 24–27. There is no evidence to suggest that the Defendant ever left the conspiracy. While involved in the conspiracy, the Defendant lived in the 4104 Madison Street apartment building where the DTO operated. *Id.* ¶ 9. He not only knew, but also lived with, the other members of the DTO. *Id.* Although the Defendant held only minor responsibilities within the DTO, his degree of participation is sufficient for this Court to conclude that he could reasonably foresee, and likely had direct knowledge, that Co-Defendant Perry and Co-Defendant Pike were dispatched to make drug transactions at a similar frequency and with a similar amount of heroin as he was. In addition, based on the Defendant's knowledge that the DTO operated out of the 4104 Madison Street apartment building, it would be reasonable

---

[1] The Court recognizes that the $21,392 recovered by law enforcement could be considered in the drug quantity calculation. *See, e.g.*, *United States v. Marty*, 450 F.3d 687, 689–91 (7th Cir. 2006). However, there is no evidence illustrating, nor does the government argue, that the entire amount of cash was the product of drug trafficking. Furthermore, the Court has not been provided—by means of expert testimony or otherwise—the market price of heroin in Gary, Indiana, which is necessary for using currency to compute drug quantity.

for him to foresee that the DTO leaders kept heroin somewhere on the property to complete future sales to the DTO's customers.

This conclusion is consistent with the outcomes of similar cases in this circuit. In *United States v. Jones*, the Seventh Circuit held that attributing to a defendant his co-conspirator's drug sales to an undercover officer was proper under a theory of conspirator liability. 900 F.3d at 447. Moreover, a district court's attribution to a defendant of co-conspirators' drug sales made at a drug house central to the conspiracy was upheld in *United States v. Turner*. 604 F.3d at 386–87. Likewise, in the instant case, the Defendant should be held accountable for the drug sales initiated at the 4104 Madison Street apartment building, including his co-defendants' sales to confidential informants.

The Defendant argues that the lower base offense level calculated in the PSR is correct because the Defendant played a minor role in the DTO and only participated in the conspiracy due to his drug addiction. Addendum to the PSR 1. Neither fact is relevant to the calculation of the base offense level. The PSR considers the Defendant's role in the DTO elsewhere in the PSR. Specifically, the PSR includes a recommended two-point downward adjustment based on the Defendant's minor role. PSR at ¶ 39. Further, the Defendant's addiction is not a factor that impacts the applicable guideline range. Rather it is a mitigating factor that the Court will consider when imposing the sentence. Sentencing Guidelines Manual § 5H1.4 (U.S. Sentencing Comm'n 2018); *see* PSR ¶ 179.

Although the Defendant may not have known the exact amount of heroin exchanged in each transaction or the frequency at which such exchanges occurred, he was certainly aware that a DTO was being operated out of the 4104 Madison Street apartment building and that Co-Defendant Perry and Co-Defendant Pike, like himself, were serving as runners for the DTO.

Despite being armed with such knowledge, the Defendant elected to remain a part of the conspiracy. Therefore, the relevant conduct of his co-defendants should be attributed to him for the purposes of sentencing.

## CONCLUSION

For the reasons stated above, the Government's objection is SUSTAINED and the Defendant's base offense level is set to sixteen.

SO ORDERED on December 9, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT